UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 13-22058-CV-WILLIAMS/O'SULLIVAN

MARIA HERRERA,

      Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on the Plaintiff's Motion for Summary Judgment

with Supporting Memorandum of Law (DE# 18, 11/06/2013) and the Defendant's Motion for

Summary Judgment with Supporting Memorandum of Law (DE #23, 02/05/2014). The plaintiff

seeks reversal of the Social Security Administration's denial of Supplemental Security Income

(hereinafter "SSI") Benefits. In the alternative, the plaintiff requests a remand for further

administrative proceedings. The complaint was filed pursuant to the Social Security Act, 42

U.S.C. §405(g) (hereinafter "Act"), and is properly before the Court for judicial review of a final

decision of the Commissioner of the Social Security Administration (hereinafter "SSA"). This

matter was referred to the undersigned by the Clerk's Notice of Magistrate Assignment (DE# 3,

06/07/13). Having carefully considered the filings and applicable law, the undersigned

recommends that the Administrative Law Judge's (hereinafter "ALJ") decision be upheld, that

the Defendant's Motion for Summary Judgment (DE# 23, 02/05/2014) be **GRANTED**,  and that

the Plaintiff's Motion for Summary Judgment (DE #18, 11/06/2013) be **DENIED**, in accordance

with the following Report and Recommendation.

## PROCEDURAL HISTORY

On August 4, 2009, the plaintiff filed an application for Social Security Income (SSI). (Tr. 135-42). In her application, the plaintiff alleged disability beginning on March 1, 2009. (Tr. 135-42). The plaintiff's application was denied initially on September 24, 2009, and upon reconsideration on January 22, 2010. (Tr. 72-74, 79-80). An administrative hearing was held on June 10, 2011. (Tr. 44-59). The plaintiff testified at the hearing and was represented by counsel. (Tr. 45-54). Mr. Nicholas Fidanza, a vocational expert (hereinafter "VE"), also testified at the hearing. (Tr. 54-59). The ALJ found that the plaintiff was not disabled within the meaning of the Act. (Tr. 26-37). The ALJ's decision became final when the Appeals Council denied the plaintiff's request for review on April 16, 2013. (Tr. 1-8).

## FACTS

I. Plaintiff's Background

The plaintiff was born in Honduras on August 22, 1958. (Tr. 52-53, 135). The plaintiff is a naturalized U.S. citizen. (Tr. 52-53, 135). The plaintiff lives at home with her husband, two adult daughters and a grandchild. (Tr.  50). The plaintiff has an eighth grade education. (Tr. 48, 169).  At the time of her administrative hearing, the plaintiff was fifty-two years old. (Tr. 48). The plaintiff does not smoke, drink alcohol or take drugs. (Tr. 317). The plaintiff has past relevant work as a self-employed street vendor selling perfumes and toys (Tr. 49, 165, 171-72). The plaintiff initially reported that she was a self-employed salesperson from 2000 to 2007, working eight hours per day, four days per week, and earning $150.00 per week income. (Tr. 165). The plaintiff later reported and testified that she was self-employed in 2009, working part-

2

time, five hours per day for three or four days. (Tr. 32, 49-50, 357). The plaintiff testified that she stopped working in 2009 because she became depressed and had joint pain. (Tr. 49-51). The plaintiff alleged disability beginning March 1, 2009, but filed her  disability claim on August 4, 2009. (Tr. 135-42, 164). The plaintiff has described her weekly activities as watching television, light cleaning, doing laundry, preparing daily meals, and occasionally socializing with friends and family. (Tr. 29, 179-84, 213-21, 313). The plaintiff also has the ability to care for her own personal hygiene and groom herself independently. (Tr. 29, 179-84, 213-21).

II. Plaintiff's Physical Impairments

The plaintiff alleges disability, in part due to osteoarthritis and hypertension. (Pl.'s Motion for Summ. J. at 11). The plaintiff's counsel noted during the administrative hearing that the plaintiff did not receive medical treatment for osteoarthritis. (Tr. 48). On September 11, 2009, John J. Catano, M.D., conducted a physical consultative examination where the plaintiff gave a subjective complaint of join pain. (Tr. 316). At that medical exam, the plaintiff denied problems standing, walking, lifting, sitting, or communicating. (Tr. 316). A physical examination of the plaintiff's extremities and joints revealed that she had no clubbing, cyanosis or edema. (Tr. 317). The plaintiff's joints appeared normal, having a normal range of motion. (Tr. 317). Dr. Catano found no evidence of inflammatory or deforming arthritis or athropathy of any joint. (Tr. 317). Dr. Catano also observed that the plaintiff was able to button and unbutton her clothing. (Tr. 317). The plaintiff was also able to pick up coins. (Tr. 317). The plaintiff walked with normal gait, ambulated without any assistive device, and had a good grip on both hands. (Tr. 316-17). The plaintiff's speech was fluent and clear. (Tr. 316). There was no presence of atrophy. (Tr. 317). The plaintiff had no muscle spasm or tenderness on her neck with full range of motion. (Tr. 318). An

3

examination of the plaintiff's lower back revealed that she had mild tenderness and spasm on the

paraspinalis muscle. (Tr. 318). The range of motion of plaintiff's low back was to 70 degrees of

anterior flexion. (Tr. 318). The plaintiff had no difficulty getting in and out of a chair and on and

off the examining table by herself. (Tr. 318). Dr. Catano observed that the plaintiff could tandem

walk and walk on her heels and toes with no difficulty. (Tr. 318).

On neurological examination, the plaintiff's cranial nerves II-XII and cerebella function

were intact. (Tr. 318). Mentally, the plaintiff was oriented in three planes and had no psychotic

features. (Tr. 318). The plaintiff's cognitive level and language skills were intact. (Tr. 318). Dr.

Catano noted, however, that the plaintiff seemed depressed, and recommended that she have a

thorough psychological evaluation. (Tr. 318). Dr. Catano's diagnostic impression is listed below:

> 1. Claimant with joint pain, arthralgias, and lower back musculoskeletal pain;
> otherwise with normal physical examination.
> 2. History of depression.

(Tr. 318).

On September 21, 2009, Single Decisionmaker[1] Tiffany Gray conducted a physical

residual functional capacity assessment of the plaintiff. (Tr. 64-71). Ms. Gray indicated that the

plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds.

(Tr. 65). Ms. Gray also noted that the plaintiff could stand/or walk with normal breaks for a total

of about 6 hours in an 8-hour workday and sit for about six hours in an eight hour workday. (Tr.

65). Ms. Gray also opined that the plaintiff's ability to push and/or pull was unlimited. (Tr. 65).

On October 3, 2009, the plaintiff was taken to the emergency department at Hialeah

---

[1]"Single decision-makers are disability examiners authorized to adjudicate cases without mandatory concurrence by a physician." Reichenbach v. Astrue, No. 4:11cv1551 TCM, 2012 WL 4049009, at *24 (E.D. Mo. Sept. 13, 2012) (citation omitted).

Hospital for a headache and was admitted for monitoring. (Tr. 577-86). A CT scan of the head

without contrast found no significant abnormalities. (Tr. 580). A neurological examination was

negative for gait disturbance, syncope, and weakness. (Tr. 582). The exam was also negative for

focal neurological deficits. (Tr. 583). The plaintiff had a blood pressure reading of 153/100, which

improved with Clonidine medication. (Tr. 584). The plaintiff was discharged the next day in

stable condition. (Tr. 584).

On October 5, 2009, Marlene Jalice, ARNP[2] of Citrus Health Network, conducted a

physical examination on the plaintiff. (Tr. 532). The plaintiff had a headache and a blood pressure

of 190/110. (Tr. 532). Subsequently, the plaintiff was transported to the emergency room at Palm

Springs General Hospital. (Tr. 337). Chest scan and brains scans were normal. (Tr. 348-49). The

plaintiff was treated, prescribed medication, and released. (Tr. 352-53). The emergency room

noted that the plaintiff has had a past medical history of hypertension. (Tr. 352).

On October 12, 2009, the plaintiff was readmitted to Palm Springs General Hospital and

sent to the emergency room for a headache and nausea. (Tr. 357).  Following a physical

examination, where the plaintiff was found to have a good grip and steady gait, the plaintiff was

released. (Tr. 373).

On December 29, 2009, State Agency physician Dr. Stanley determined that the plaintiff's

physical conditions were not severe. (Tr. 405). Dr. Stanley noted that there was no physical

worsening or new limits. (Tr. 405). On December 29, 2010, Marlene Jalice, ARNP of Citrus

---

[2]An Advanced Registered Nurse Practitioner is "any person licensed . . . to practice professional nursing and certified in advanced or specialized nursing practice, including certified registered nurse anesthetists, certified nurse midwives, and nurse practitioners."  Fla. Stat. § 464.003

Health Network, issued a progress report for a follow-up, noting that the plaintiff had benign essential hypertension. (Tr. 521). The report indicated that the hypertension was well controlled when treated with medication. (Tr. 521).

### III. Plaintiff's Mental Impairments

The plaintiff alleges disability, in part due to depression. (Pl.'s Motion for Summ. J. at 2, 11). The plaintiff received treatment for depression at Citrus Health Network from April 2009 to May 2011. (Tr. 296-311, 376-82, 477-563). Berta M. Guerra, M.D., saw the plaintiff for medication management. (Tr. 306-09). Erika Pablos-Velez, M.A., was the plaintiff's psychotherapist. (Tr. 479-481). The plaintiff failed to show up for several appointments in the period from November 23, 2009, through February 8, 2011. (Tr. 378, 380, 477, 479, 481, 484-88, 490, 493, 495, 497, 504, 511). During this period of treatment, the plaintiff went through multiple medication changes. (Tr. 296-297, 482, 502, 512, 514-15, 534-35, 538-39). The plaintiff reported that she had variable sleep, an anxious mood, mood swings, and occasional racing thoughts. (Tr. 483, 487, 506, 512, 514, 554-55). The plaintiff's diagnosis remained bipolar disorder and psychotic disorder. (Tr. 563).

On July 7, 2009, the plaintiff was admitted for monitoring at Palmetto General Hospital after stating that she had overdosed on medication and was dealing with multiple stressors. (Tr. 255-56, 261, 285, 421-76).  The plaintiff was Baker Acted secondary to death wishes and suicidal ideation. (Tr. 255-258). The plaintiff's toxicology screen was negative, and she reported no recent hospitalization. (Tr. 256). It was also reported that the plaintiff was not on any psychiatric medication. (Tr. 256). The plaintiff was diagnosed with major depressive disorder with psychotic features. (Tr. 268). The plaintiff was discharged the following day and given medication. (Tr. 254,

304-05). The plaintiff was also given instruction to follow up with Dr. Berta Guerra. (Tr. 254, 304-05 )

On September 9, 2009, the plaintiff underwent a psychological evaluation conducted by Mary D. DeCruise, Psy.D. (Tr. 312-15). Dr. DeCruise noted that the plaintiff was disheveled, fairly groomed and her hygiene appeared to be adequate (Tr. 313). The plaintiff was cooperative throughout the interview and was oriented to person, situation and time (Tr. 313). The plaintiff's rate of speech and tone were normal, while her eye contact was fair (Tr. 313). Dr. DeCruise also indicated that the plaintiff's thought process was relevant and coherent (Tr. 313). Throughout the evaluation, the plaintiff's abstract thinking, social judgment, insight and concentration were fair (Tr. 313). During the time of observation, the plaintiff's impulse control appeared to be intact (Tr. 313). The plaintiff denied experiencing any hallucinations or delusions during the evaluation. Furthermore, the plaintiff denied any current suicidal/homicidal ideation. (Tr. 313). The plaintiff was able to read, write, follow instructions and respond to questions (Tr. 313). The plaintiff also demonstrated a vocabulary and sentence structure within what is expected for those within her age group. (Tr. 313). Although the plaintiff performed poorly on Serial 7's[3] and the backward spelling test, she was a good historian and was able to recall significant events with adequate detail. (Tr. 313). Dr. DeCruise opined that the plaintiff required assistance managing her funds. (Tr. 314). The plaintiff's diagnosis was depressive disorder, not otherwise specified, and osteoporosis, high blood pressure and high cholesterol. (Tr. 314).

On September 21, 2009, the plaintiff's affective and anxiety-related disorders were found

---

[3]"Serial seven tests are used to evaluate concentration by having the claimant subtract serial sevens from 100." Wiss v. Astrue, No. 4:12-cv-00204-NAB, 2013 WL 1301632, at *11 n.1 (E.D. Mo. March 28, 2013) (citing 20 C.F.R. pt. 404, supt. P, app. 1, § 12.00(C)(3)).

non-severe by psychologist David L. Kirk, Ph.D. (Tr. 323). On October 3, 2009, during an

emergency room visit at Hialeah Hospital, the plaintiff denied suicidal/homicidal ideation,

hallucinations, or delusions and was alert and awake. (Tr. 583).

On January 19, 2010, David Clay, Ph.D. found that the plaintiff's affective disorder did

not meet the "B criteria" of the Listings[4] and was non-severe. (Tr. 393). Dr. Clay noted that the

plaintiff had a mild restriction in the activities of daily living, moderate difficulties in maintaining

social functioning and mild difficulties in maintaining concentration, persistence, or pace. (Tr.

393). Dr. Clay also indicated that the plaintiff had one or two episodes of decompensation. (Tr.

393). In addition, Dr. Clay found that the plaintiff could understand, retain, and carry out simple

instructions. (Tr. 399). The plaintiff could also consistently and usefully perform routine tasks on

a sustained basis and could cooperate effectively with the public and prospective co-workers in

completing simple tasks and transactions. (Tr. 399). Furthermore, the plaintiff could adjust to the

mental demands of most new task settings. (Tr. 399).

On May 23, 2010, the plaintiff was admitted to Hialeah Hospital due to complaints of

slurred speech, general weakness, fainting, depression, and chest paints. (Tr. 569). The plaintiff's

Brain CT scan was normal (Tr. 565). The plaintiff was given a preliminary diagnosis of having an

altered level of consciousness. (Tr. 572). The plaintiff was then discharged and transferred to

Palmetto General Hospital for a psychiatric evaluation. (Tr. 406-20, 567). Mark A. Hernandez,

M.D. found that the patient was awake, alert, and oriented, but somewhat anxious and depressed

(Tr. 413). The plaintiff denied any perceptual disturbances, and her thoughts seemed to be

---

[4]The criteria in paragraph B "describe[s] impairment-related functional limitations that are incompatible with the ability to do any gainful activity." 20 C.F.R. pt. 404, supt. P, app. 1, § 12.00(A).

organized and logical. (Tr. 413). The plaintiff also denied any current suicidal or homicidal ideations. (Tr. 413). The plaintiff's diagnostic impression was bipolar disorder, depressed type; hypertension; and osteoporosis. (Tr. 413). Before being discharged, the plaintiff was instructed to follow up with Citrus Health Network. (Tr. 414).

On October 25, 2010, the plaintiff was admitted to Citrus Health Network for inpatient psychiatric treatment. (Tr. 452, 494, 541-52). The plaintiff had expressed suicidal ideation due to a feeling of hopelessness. (Tr. 494). The plaintiff also reported experiencing auditory hallucinations and a difficulty in controlling negative thoughts. (Tr. 494). The plaintiff was prescribed Norvasc, Doxepin and Geodon. (Tr. 542-43). On discharge, the plaintiff was in good and stable condition. (Tr. 541). The plaintiff left on her own and denied any suicidal or homicidal ideas. (Tr. 541).

On November 4, 2010, Dr. Berta Guerra noted that the plaintiff felt better after her hospitalization at Citrus Health Network (Tr. 491). The plaintiff's psychiatrist prescribed Zyprexa, Cogentin, Benadryl, and Paxil, increased her Geodon, and continued the plaintiff on Doxepin and Lithium Carbonate. (Tr. 535).

On November 15, 2010, the plaintiff denied suicidal/homicidal ideation and psychotic symptoms. (Tr. 489). The plaintiff also reported symptom relief since her hospitalization, stating that she felt more positive about the future. (Tr. 489). On January 10, 2011, Erika Pablos-Velez, M.A., noted that the plaintiff had an euthymic mood and stable affect. (Tr. 480). The plaintiff's mental status examination was within normal limits. (Tr. 480). Once more, the plaintiff denied suicidal/homicidal ideation and psychotic symptoms. (Tr. 480).

On April 5, 2011, the plaintiff reported having a better mood and being less depressed.

9

(Tr. 555). The plaintiff again denied suicidal/homicidal ideation and psychotic symptoms. (Tr. 555). The plaintiff was diagnosed with bipolar disorder, NOS; psychotic disorder, NOS; post traumatic stress, DO and hypertension. (Tr. 563). On May 2, 2011, Dr. Berta Guerra indicated that the plaintiff was less depressed. (Tr. 553). The plaintiff denied hypomania or manic symptoms, and again denied any passive or active suicidal/homicidal ideation or psychotic symptoms. (Tr. 553). The plaintiff also mentioned that she was sleeping well. (Tr. 553).

    IV. <u>The Administrative Hearing</u>

    A hearing was held before the ALJ on June 10, 2011. (Tr. 44). At the hearing, the plaintiff gave testimony about her personal history, work history, as well as her alleged physical and mental impairments. (Tr. 49-54). The plaintiff also gave testimony about her medications and the effect of those medications on her daily life. (Tr. 51-54). The plaintiff testified that she "spends days locked in [her] . . . room" crying in the dark and sometimes falls into a "state of madness where [she] wants to take pills, and just die." (Tr. 50, 53). The plaintiff also testified that she took pills the day before the hearing. (Tr. 50).  At the hearing, the VE classified the plaintiff's past work history under the general title of peddler, which consists of work with medium physical demand and SVP of 3. (Tr. 56). During the hearing, the ALJ proposed a hypothetical mirroring the plaintiff's age, education, and work experience. (Tr. 56). The ALJ added that the plaintiff could only perform the basic demands of unskilled work, carry out simple tasks and engage in occasional social interaction. (Tr. 56-57). Based on this hypothetical, the VE testified that such a person could not perform the plaintiff's past work as a peddler. (Tr. 57). The VE proposed that the plaintiff could be a general laborer, for which 1,000 jobs existed in the tri-county area; a hand packager, for which 1,000 jobs existed in the tri-county area; and a housekeeper, for which 2,000

jobs existed in the tri-county area. (Tr. 57).

## THE ALJ'S DECISION-MAKING PROCESS

"Disability" is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can last for a continuous period of not less than twelve months...." 42 U.S.C. §§ 416(I); 423(d)(1); C.F.R. § 404.1505 (2005). The impairment(s) must be severe, making the plaintiff "unable to do his previous work... or any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1505-404. 1511 (2005).

To determine whether the plaintiff is entitled to disability benefits, the ALJ must apply a five-step analysis. 20 C.F.R. § 404.1520(a)-(f). The ALJ must first determine whether the plaintiff is presently employed or engaging in substantial gainful activity. If so, a finding of non-disability is made and the inquiry ends.

Second, the ALJ must determine whether the plaintiff suffers from a severe impairment or a combination of impairments. If the plaintiff does not, then a finding of non-disability is made and the inquiry ends.

Third, the ALJ compares the plaintiff's severe impairments to those in the listings of impairments located in Appendix I to Subpart 404 of the Code of Federal Regulations. 20 C.F.R. § 404.1520 (d), Subpart P, Appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the plaintiff's ability to perform other work. See Gibson v. Heckler, 762 F.2d 1516, 1518 n.1 (11th Cir. 1985).  If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded.

11

20 C.F.R.  § 404.1520(d).

Fourth, the ALJ must determine whether the plaintiff has the "residual functional capacity" to perform his or her past relevant work. "Residual functional capacity" (hereinafter "RFC") is defined as "what you can do despite your limitations." 20 C.F.R. § 404.1545(a)(1). This determination takes into account "all relevant evidence," including medical evidence, the claimant's own testimony and the observations of others. *Id.* If the plaintiff is unable to perform his or her past relevant work, then a prima facie case of disability is established and the burden of proof shifts to the Commissioner to show at step five that there is other work available in the national economy which the plaintiff can perform. 20 C.F.R. § 404.1520(e); see Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991) (The claimant bears the initial burden of proving that he is unable to perform previous work).

Fifth, if the plaintiff cannot perform his or her past relevant work, the ALJ must decide if he or she is capable of performing any other work in the national economy.

## **THE ALJ'S FINDINGS**

In the instant case, at step one, the ALJ determined that the plaintiff was not employed, and thus not engaged in substantial gainful activity. (Tr. 28). This allowed the ALJ to move to step two to determine whether the plaintiff had a severe impairment or combination of impairments. The ALJ found that the plaintiff had bipolar disorder, depressed type, which was a severe impairment as defined in the regulations at 20 C.F.R. § 416.920(c) (2013). (Tr. 28). The ALJ found the plaintiff's alleged physical impairments, osteoarthritis and hypertension, as non-severe due to the lack of documentation in the medical record of "objective medically acceptable clinical and diagnostic techniques documenting the existence of an underlying impairment that

would result in the pain." (Tr. 29). The ALJ's decision was further supported by the absence of

documentation of the claimant receiving "consistent and ongoing treatment for these conditions"

and the acknowledgment made by the plaintiff's representative that the plaintiff had not been

treated for the alleged physical impairments. (Tr. 28).

At step three, the ALJ found that the plaintiff's medically determinable mental impairment

of bipolar disorder, depressed type did not meet or equal the severity of one of the listed

impairments located in Appendix I to Subpart 404 of the Code of Federal Regulations. 20 C.F.R.

§ 404.1520 (d), Subpart P, Appendix I. (Tr. 29.) In the decision, the ALJ assessed the four broad

functional areas, the "paragraph B" criteria, as required by disability regulations, to determine

whether the plaintiff's mental impairment of bipolar disorder, depression type was severe enough

to satisfy the listed impairments. (Tr. 29). With regard to the activities of daily living and social

functioning, the ALJ found that the plaintiff had no more than a mild restriction. (Tr. 29-30). The

ALJ also concluded that the plaintiff had mild difficulties with respect to concentration,

persistence or pace. (Tr. 30). In addition, the ALJ determined that the plaintiff had not

experienced any episodes of decompensation of extended duration. (Tr. 30-31).  In each of the

four areas, the ALJ cited the plaintiff's testimony from the administrative hearing or information

contained in medical records to support his finding. (Tr. 29-31). Moreover, the ALJ also

considered whether the plaintiff's mental impairment satisfied the "paragraph C" criteria. The

ALJ found that the plaintiff did not have "a medically documented history of chronic affective

disorder of at least two years' duration that has caused more than a minimal limitation of ability to

do basic work activities." (Tr. 31).

At step four, the ALJ determined that the plaintiff could not perform her past relevant

work, but that the plaintiff had the residual functional capacity to perform a range of unskilled

work. Based on the medical record, the ALJ concluded:

> [T]he claimant has no established exertional limitations and thus has the residual
> functional capacity to perform a full range of work at all exertional levels but with the
> following nonexertional limitations: Mentally, the claimant can do the basic demands of
> unskilled work as that term is defined by the regulations, that is, she can understand,
> remember and carry out simple, routine, repetitive tasks involving only simple work-
> related decisions, and in general, relatively few work place changes, and limited to
> occasional interaction with the general public.

(Tr. 31).

At step five, the ALJ determined that there were jobs that existed in significant numbers in

the national and local economy that the plaintiff could perform, including working as a general

laborer, hand packager, and housekeeper. (Tr. 36-37). In making that determination, the ALJ

considered all the medical records in the transcript and relied on the testimony of the VE, which

the ALJ found was consistent with the information contained in the Dictionary of Occupational

Titles. (Tr. 37).

## STANDARD OF REVIEW

The Court must determine if it is appropriate to grant either party's motion for summary

judgment. Judicial review of the factual findings in disability cases is limited to determining

whether the record contains substantial evidence to support the ALJ's findings and whether the

correct legal standards were applied. 42 U.S.C. § 405(g) (2006); see Wolfe v. Chater, 86 F.3d

1072, 1076 (11th Cir. 1996) (holding that the reviewing court must not re-weigh evidence or

substitute its discretion). On judicial review, decisions made by the defendant, the Commissioner

of Social Security, are conclusive if supported by substantial evidence and if the correct legal

standard was applied. 42 U.S.C. § 405(g) (2006); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir.

1999). Substantial evidence is more than a scintilla, but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Substantial evidence is relevant evidence a reasonable person would accept as adequate to support the ALJ's conclusion. Richardson, 402 U.S. at 401. In determining whether substantial evidence exists, "the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).

The restrictive standard of review, however, applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law, including the determination of the proper standard to be applied in reviewing claims. See Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("Commissioner's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."); accord Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The reviewing court must be satisfied that the decision of the Commissioner is grounded in the proper application of the appropriate legal standards. See Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993). The court may not, however, decide facts anew, re-weigh evidence or substitute its judgment for that of the ALJ, and even if the evidence weighs against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); see also Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989). Factual evidence is presumed valid, but the legal standard applied is not. See Martin, 894 F.2d at 1529. The Commissioner must apply the correct legal standard with sufficient reasoning to avoid reversal. Id.

15

## LEGAL ANALYSIS

The plaintiff objects to the ALJ's evaluation of the plaintiff's physical and mental conditions. (Pl.'s Motion for Summ. J. at 10). First, the plaintiff contends that the ALJ erred by applying the rules regarding 'episodes of decompensation' too mechanically. (Pl.'s Motion for Summ. J. at 14-17). The plaintiff also asserts that the ALJ's RFC determination was erroneous because: (1) the ALJ's finding that the plaintiff had no physical functional limitations was contrary to the medical evidence; and (2) the ALJ did not properly consider the impact of medication side-effects or multiple medication changes on plaintiff's functionality. (Pl.'s Motion for Summ. J. at 10-14). Finally, the plaintiff further argues that the ALJ's mental RFC finding exceeded the mental demands of unskilled work and should have led to a finding of disability. (Pl.'s Motion for Summ. J. at 17-19). The undersigned finds that the ALJ's findings are substantially justified by the record and that the ALJ's decision should be affirmed. See Miles, 84 F.3d at 1400; see also Baker, 880 F.2d at 321.

## I. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT THE PLAINTIFF DID NOT MEET THE LISTINGS

The plaintiff asserts that the ALJ erred when she found that the plaintiff's bipolar disorder, depressed type did not meet or medically equal the severity of one of the listed impairments found in Appendix I of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). (Pl.'s Motion for Summ. J. at 14-17). The plaintiff contends that the ALJ erred when she found that the plaintiff did not have any episode of decompensation, each of an extended period because Dr. Clay's evaluation indicated that the plaintiff had at least one or two and the record evidence shows that the plaintiff may have had more than two. (Pl.'s Motion for Summ. J. At 14-17).

To satisfy the "paragraph B criteria" of the medical listings, the mental impairment must result in at least two of the following: 1) marked restriction in activities of daily living; 2) marked difficulties in maintaining social functioning; 3) marked difficulties in maintaining concentration, persistence, or pace; or 4) repeated episodes of decompensation, each of extended duration. See 20 C.F.R. pt.404, subpt. P, app. 1, § 12.04. Even if the ALJ had found that the plaintiff did have more than two repeated episodes of decompensation, the plaintiff would still not have satisfied the "paragraph B criteria". In his evaluation, Dr. Clay reported that the plaintiff had a mild restriction in activities of daily living, moderate difficulties in maintaining social functioning and mild difficulties in concentration, persistence, or pace. (Tr. 393). Thus, assuming that the ALJ found that the plaintiff had more than two repeated episodes of decompensation, only one of the two needed criteria would have been satisfied.

The plaintiff argues that the ALJ rigidly applied the rules for episodes of decompensation, each of extended duration. In the listings, repeated episodes of decompensation, each of extended duration are either three episodes within one year, or an average of once every four months, each lasting for at least two weeks. See 20 C.F.R. pt404, subpt. P, app. 1, § 12.00C4.  The plaintiff bears the burden to show that she has an impairment or combination of impairments that meets or exceeds the criteria in the Listing of Impairments in Appendix I of Subpart P of 20 C.F.R. § 404. See Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990). The plaintiff has not met her burden. The plaintiff states that the evidentiary record shows that the plaintiff may have had three or four repeated episodes of decompensation.  (Pl.'s Motion for Summ. J. at 16-17).  In support of her contention, the plaintiff cites her three hospitalizations for suicidal ideation on July 7, 2009 to July 8, 2009, May 23, 2010 to May 25, 2010, and October 25, 2010 to October 28, 2010. (Pl.'s Motion

17

for Summ. J. at 15-17). The plaintiff also opines that she may have had another episode at the time of her hearing on June 11, 2011. (Pl.'s Motion for Summ. J. at 16). Assuming that these incidents were part of episodes of decompensation, the plaintiff has not provided or pointed to any evidence in the record to indicate that they each lasted for two weeks. In addition, even if the court were to assume that these incidents were part of episodes of decompensation, all the episodes were significantly spread apart, and there is no indication in the record that the plaintiff had experienced more frequent episodes of shorter duration or less frequent episodes of longer duration. The plaintiff has not shown how the ALJ's determination amounted to reversible error.[5]

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION THAT THE PLAINTIFF POSSESSED THE RFC TO PERFORM WORK AT ALL EXERTIONAL LEVELS WITH NON-EXERTIONAL LIMITATIONS DUE TO HER MENTAL IMPAIRMENTS

The ALJ found that the plaintiff's alleged hypertension and osteoarthritis were non-severe because there was no medical evidence of record documenting "the existence of an underlying impairment that would result in the pain of which the claimant complain...[and] no documentation that the claimant has received consistent and ongoing treatment for these conditions." (Tr. 29). The ALJ also determined that the plaintiff's alleged depression was severe because it "more than minimally [affected] her ability to perform basic work-related functions" (Tr. 28). However, after examining "the entire record", the ALJ concluded that the plaintiff had "no established exertional limitations and thus [had] the residual functional capacity to perform a full range of work at all

---

[5]See Shinseki v. Sanders, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); see also Romeo v. Astrue, No. 8:09-CV-502-T-TGW, 2010 U.S. Dist. LEXIS 38010, 2010 WL 1180357, at *13-14 (M.D. Fla. March 25, 2010) (concluding that the plaintiff failed to show how a finding of one or two episodes of decompensation would alter the ALJ's determination that the plaintiff did not meet or equal the requirements of the listings or would otherwise amount to reversible error).

exertional levels....", but with non-exertional limitations that leave the plaintiff mentally capable to meet the basic demands of unskilled work. (Tr. 31).

The ALJ's RFC determination is substantially justified and supported by the record because the medical evidence supports the assessment that the plaintiff lacked severe physical impairments that did not limit the claimant's ability to do basic work activities. Further, the ALJ's finding that the plaintiff's mental impairments did not significantly limit her functionality was based on the totality of all the relevant evidence.

   **A. The ALJ did not err in finding that the plaintiff's osteoarthritis and hypertension were non-severe where the evidence showed that those conditions did not limit the claimant's ability to do basic work activities**

The plaintiff contends that the ALJ did not comply with SSR 96-8p, 1996 WL 374184 (July 2, 1996) (hereinafter "SSR 96-8p"), because the plaintiff has always alleged her physical impairments and the record supports the determination that her physical impairments severely limit her functionality. (Pl.'s Motion for Summ. J. at 10-12). The plaintiff asserts that a finding that a claimant has no physical functional limitations is limited to circumstances where "there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction with respect to that functional capacity." SSR 96-8p. (Pl.'s Motion for Summ. J. at 11).  However, contrary to the plaintiff's contention, SSR 96-8p does not state that an ALJ may only find that a claimant has no physical functional limitations when such circumstances exist, but "in fact uses that language to indicate the circumstances under which an adjudicator *must* find...'no limitation or restriction' *with respect to that functional capacity.*'" See Zarrilli v. Astrue, No. 08-22418-CIV, 2008 WL 4936613, at * 7 (D. Me. Nov. 16, 2008) (emphasis in original), aff'd, No. 08-82-B-W, 2008 WL

5179109 (D. Me. Dec. 8, 2008). Accordingly, because the ALJ was not limited by the aforementioned circumstances, the ALJ maintained the discretion to find that the plaintiff had no physically severe functional limitations based on an assessment of the record evidence.

The ALJ's finding that the plaintiff's osteoarthritis and hypertension were non-severe and had no significant limit on the plaintiff's ability to do basic work activities is substantially justified by the record. "An impairment or combination of impairments is not severe if it does not significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). Some examples of basic work activities include walking, standing, sitting, pushing, pulling, reaching, and carrying. See 20 C.F.R. § 416.921(b). The plaintiff bears the burden of showing that his or her impairments are severe. See Bowen v. Yuckert, 482 U.S. 132, 146 (1987); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).[6]

The plaintiff has not met her burden. The ALJ substantially supported the determination with the established record evidence. The plaintiff's counsel noted during the administrative hearing that the plaintiff did not receive medical treatment for osteoarthritis. (Tr. 48). The plaintiff denied problems standing, walking, lifting, or sitting. (Tr. 316). Dr. Catano's consultative examination produced no evidence of inflammatory or deforming arthritis. (Tr. 317). Although Dr. Catano indicated that the plaintiff had some difficulty with her lower back, he noted that the plaintiff's examination was otherwise normal. (Tr. 318). The plaintiff admitted to being able to do light cleaning and being able to lift light things. (Tr. 183, 193). Multiple physical examinations documented that the plaintiff has a normal range of motion and a normal gait. (Tr.

---

[6]Moore, 405 F.3d at 1211 ("A claimant has a 'very heavy' burden to demonstrate both a qualifying inability to perform past relevant work.").

317-18, 373-74, 582-83). After a visit to the hospital due to a headache, the plaintiff was

discharged in stable condition. At the time of discharge, the plaintiff's high blood pressure had

improved with medication. (Tr. 584). Moreover, Citrus Health Network reported that the

plaintiff's benign essential hypertension was well controlled when treated with medication. (Tr.

521). Dr. Stanley determined that the plaintiff's physical conditions were not severe, and noted

that there was no physical worsening or new limits. (Tr. 405). Single Decisionmaker Tiffany Gray

indicated that the plaintiff could occasionally lift and/or carry 50 pounds and frequently lift and/or

carry 25 pounds. (Tr. 65). Ms. Gray also noted that the plaintiff could stand, sit and/or walk for a

total of about six hours in an eight-hour workday. (Tr. 65). The aforementioned evidence in the

record substantially supports the ALJ's finding that the plaintiff was not significantly limited in

her physical ability to perform basic work activities.

     B. **Substantial evidence supports the ALJ's finding that the plaintiff had no additional functional limitations due to medication side effects**.

     The plaintiff asserts that the ALJ's RFC finding did not properly consider the impact of

medication side effects or multiple medication changes when assessing the plaintiff's mental

impairments on her functionality. (Pl.'s Motion for Summ. J. at 12-14). When evaluating the

intensity and persistence of a claimant's symptoms and determining the extent to which the

claimant's symptoms limit the claimant's capacity for work, the ALJ must consider "all of the

available evidence, including [one's] medical history, the medical signs and laboratory findings

and statements about how [one's] symptoms affect them." 20 C.F.R. 416.929(a). Some relevant

factors to an RFC determination include treatment, other than medication, that one can receive or

has received for relief of one's pain or other symptoms and the type, dosage, effectiveness, and

side effects of any medication one takes or has taken to alleviate one's pain or other symptoms. 20 C.F.R. 416.929(c)(3)(iv)-(v).

Substantial evidence supports the ALJ's findings because the record does not indicate that the plaintiff had additional functional limitations due to medication side effects. During the hearing, the ALJ solicited testimony regarding the effect of the plaintiff's prescribed medications upon her ability to work. (Tr. 51).  The plaintiff testified that she experienced some debilitating side effects due to medication. (Tr. 51-54). As noted by the ALJ, the medical record, however, reveals that the medications had been readily effective in controlling and improving the claimant's symptoms (Tr. 35). The plaintiff's psychiatrist did make numerous medication changes in response to side effects such as anxiety, mood swings, sadness, and irritability, (Tr. 478, 499, 502, 506, 514, 515), but the plaintiff was not taking high levels of psychotropic medications. (Tr. 35, 534-36). While on medication, the plaintiff denied suicidal ideation/homicidal ideation and psychotic symptoms on multiple occasions. (Tr. 313, 413, 480, 489, 553, 555, 583). During the plaintiff's psychological evaluation with Dr. DeCruise, the plaintiff denied experiencing hallucinations or delusions. (Tr. 313). After the plaintiff's final hospitalization for suicidal ideation (Tr. 541-52), the evidence shows that the plaintiff had a marked improvement. During the plaintiff's last several follow-up visits at Citrus Health Network, the plaintiff felt more positive about the future, had an euthymic mood and stable affect, and was less depressed. (Tr. 480, 489, 491, 553, 555). The plaintiff's mental status examination conducted on January 10, 2011, was within normal limits. (Tr. 480). The most recent progress note from Citrus Health Network reported that the plaintiff was less anxious and less depressed. (Tr. 553). The plaintiff also mentioned that she was sleeping well and denied hypomania or manic symptoms. (Tr. 553). At the

hearing, the plaintiff stated that she still experienced negative side effects due to medication, but admitted that the medication helped her. (Tr. 51). The ALJ considered all of the relevant evidence such as the objective medical findings and reports as well as the plaintiff's statements. The relevant evidence substantially supports a finding that the plaintiff's subjective complaints about the impact of her medications on her functionality were not fully credible because, even though the plaintiff experienced many medication changes due to side effects, the effectiveness of the plaintiff's psychiatric treatment and the objective medical evidence documented a steady improvement in her condition and demonstrated no functional limitations.

### III. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION THAT THE PLAINTIFF CAN MAKE A SUCCESSFUL ADJUSTMENT TO OTHER WORK

Substantial evidence supports the ALJ's determination that the plaintiff can make a successful adjustment to other work and is not disabled. The plaintiff contends that the ALJ's RFC determination should have led to a finding that the plaintiff was disabled because her limitations demonstrated that she was unable to perform other work. (Pl.'s Motion for Summ. J. at 17-19). The ALJ found that the plaintiff had the RFC to meet the basic demands of unskilled work (Tr. 31). The basic demands of unskilled work include the abilities to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. See SSR 85-15, 1985 WL 56857 (January 1, 1985); see also C.F.R. 416.945(c). With the assistance of the VE, the ALJ concluded that the plaintiff was unable to perform any past relevant work (Tr. 35-36). The VE testified that the mental demands of the plaintiff's past work as a self-employed peddler exceeded the plaintiff's RFC. (Tr. 36, 56). The VE classified a self-employed peddler as semi-skilled work (Tr.

36, 56).

   The plaintiff contends that the plaintiff's mental RFC prevented her from meeting the limitation to engage in simple, routine and repetitive tasks. (Pl.'s Motion for Summ. J. at 18). At step four, the ALJ found that the plaintiff was unable to perform any past relevant work. (Tr. 35). At step five, the ALJ bore the burden "to show the existence of other jobs in the national economy, which, given the plaintiff's impairments, the plaintiff can perform." See Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). To meet this burden, the ALJ may solely rely on the testimony of a VE. Id. at 1230. In order to amount to substantial evidence, the VE's testimony must be given in response to a hypothetical question which comprises all of the claimant's impairments." Id. at 1229. An ALJ's hypothetical question that restricts the claimant to simple, routine, and repetitive tasks or unskilled work, may sufficiently account for a claimant's impairments if the medical evidence demonstrates that the claimant has the ability to perform those tasks despite limitations. See Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011);[7] Land v. Comm'r of Soc. Sec., 494 F. App'x 47, 50-51 (11th Cir. 2012).[8] Even with mild deficiencies in concentration, persistence, or pace, the medical evidence demonstrated that

---

   [7]See Winschel, 631 F.3d 1176 at 1180 ("[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitation in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations").

   [8]In Land, the Eleventh Circuit found that an ALJ's hypothetical question properly incorporated the relevant medical evidence regarding the claimant's mental limitations by limiting it to a hypothetical individual capable of performing simple, routine, repetitive tasks. 494 F. App'x at 50-51.

the plaintiff possessed the ability to engage in simple routine and repetitive tasks.[9] Dr. DeCruise's psychological evaluation indicated that the plaintiff had fair abstract thinking, social judgment, insight, and concentration. (Tr. 313). As the ALJ also noted, the record shows that the plaintiff was able to read, write, follow instructions, respond to questions, and recall significant events with adequate detail (Tr. 313). Dr. Clay's psychiatric evaluation indicated that the plaintiff had only mild difficulties in maintaining concentration, persistence, or pace. (Tr. 393). In addition, Dr. Clay reported that the plaintiff could consistently and usefully perform routine tasks on a sustained basis. (Tr. 399). The ALJ consulted a VE to determine whether the plaintiff retained the ability to do other work based on the medical record and the plaintiff's RFC. (Tr. 36-37, 54-58). The ALJ asked the VE whether work existed in the national economy for a hypothetical person with the plaintiff's vocational profile and limitations, including the ability to "do simple repetitive tasks [and] carry out short simple instructions." (Tr.36, 56-57). The VE testified that the hypothetical person would be able to perform other work as a general laborer, hand packager, and housekeeper. (Tr. 36-37, 56-57). The ALJ adequately considered the plaintiff's impairments and limitations when the ALJ determined that the plaintiff's RFC allowed her to perform other work that engaged in simple, routine and repetitive tasks.

The plaintiff alleges that the plaintiff's limitation to relatively few work place changes and occasional public contact are significant non-exertional limitations. (Pl.'s Motion for Summ. J. at

---

[9]In Smith v. Commissioner of Soc. Sec., 486 F. App'x 874, 876-77 (11th Cir. 2012), the court found that the record medical evidence indicated that the performance of simple, routine and repetitive tasks sufficiently amounted to a moderate limitation in ability to maintain concentration, persistence or pace. In the instant case, the plaintiff was found to have only a mild limitation with regard to concentration, persistence, or pace. See also Allison v. Apfel, No. 99-4090, 2000 U.S. App. LEXIS 22689, 2000 WL 127695, at *4 (6th Cir. 2000) (ALJ's limitation to simple, routine, repetitive tasks means unskilled light work).

18-19). Substantial evidence supports the determination that these limitations did not prevent the plaintiff from meeting the basic demands of unskilled work. Dr. DeCruise's psychological evaluation noted that the plaintiff's rate of speech and tone were normal while her eye contact was fair. (Tr. 313). Dr. DeCruise also reported that the plaintiff demonstrated an age appropriate vocabulary. (Tr. 313). Moreover, Dr. Clay indicated that the plaintiff could cooperate effectively with the others in completing simple tasks and transactions. (Tr. 399). Dr. Clay also reported that the plaintiff had moderate difficulties in maintaining social functioning and only a mild restriction in the activities of daily living. (Tr. 393). The ALJ's hypothetical to VE asked whether work existed in the national economy for a hypothetical person with the plaintiff's vocational profile and RFC, including the ability "to respond appropriately to changes in a routine work setting, interact appropriately with co-workers, and limited to jobs that do not require more than occasional interaction with the general public." (Tr. 56-57). The VE's testimony stated that, even with these limitations, the hypothetical person could work as a general laborer, hand packager, and housekeeper. (Tr. 36-37, 57). There is no indication in the record evidence or the VE's testimony that the plaintiff's limitation to relatively few work place changes and occasional public contact would significantly limit her ability to perform unskilled work.

Based on all the relevant evidence and the VE's testimony, the ALJ had substantial evidence to find that the plaintiff had the ability meet the basic demands of unskilled work and successfully adjust to other work that exists in significant numbers in the national economy. The undersigned finds that the ALJ's conclusion that the plaintiff was not disabled under the Act and therefore did not qualify for SSI is substantially justified by the record.

**RECOMMENDATION**

In accordance with the foregoing Report and Recommendation, it is

**RESPECTFULLY RECOMMENDED** that the decision of the Commissioner be

**AFFIRMED**, the Defendant's Motion for Summary Judgment (DE#23, 02/05/2013) be

**GRANTED** and the Plaintiff's Motion for Summary Judgment (DE#18, 11/06/2013) be

**DENIED**.  The parties have fourteen (14) days from the date of receipt of the Report and

Recommendation within which to serve and file written objections, if any, with United States

District Judge Kathleen M. Williams.  Failure to file objections timely shall bar the parties from

attacking on appeal the factual findings contained herein.  See RTC v. Hallmark Builders, Inc.,

966 F.2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 15th

day of August, 2014.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
United States District Judge Williams
All counsel of record

27